## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **GLENDA SANCHEZ-SALMERON**, *as next friend of Jose N. Giron, Minor* | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No.: RWT 11-cv-0799 |
| | * | |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY** | * | |
| | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

On or about January 4, 2011, Plaintiff Glenda Sanchez-Salmeron, as next friend for her minor son, Jose N. Giron ("J.G."), filed a two Count complaint in the District Court of Maryland for Montgomery County, Maryland against the Washington Metropolitan Area Transit Authority ("WMATA") and an unidentified WMATA bus operator[1] ("the operator"). Compl., ECF No. 2. Plaintiff alleges that the operator's negligent driving caused J.G. to sustain an injury while riding a WMATA bus. *Id.* Plaintiff seeks $15,000.00 in damages. *Id.* On March 28, 2011, Defendant WMATA removed the action to this Court. ECF No. 1.

At the conclusion of discovery, WMATA filed a Motion for Summary Judgment on February 21, 2012 pursuant to Federal Rule of Civil Procedure 56. ECF No. 23. On March 16, 2012, Plaintiff filed her opposition to Defendant's Motion for Summary Judgment, ECF No. 26, to which Defendant replied on March 30, 2012. ECF No. 29. The Court scheduled a hearing on Defendant's Motion for Summary Judgment for June 19, 2012 at 10:00 a.m. *See* ECF No. 22. Plaintiff's counsel did not appear at the hearing. Upon review of the papers filed, the Court finds

---

[1] Plaintiff never effected service as to the John Doe bus operator.

that a hearing in this matter to be unnecessary and, for this reason, decided not to reschedule the hearing. *See* Local Rule 105.6 (D. Md. 2011). For the reasons discussed below, this Court will grant Defendant's motion for summary judgment.

## I. Background

On February 14, 2009, Plaintiff and her son J.G. boarded a bus at the Silver Spring Metrorail station headed toward the Wheaton Metrorail station. *See* Def. Mot. Summ. J., Sanchez-Salmeron Dep., Ex. 1, ECF No. 21-2 at 7, 17. Plaintiff's two other children, Plaintiff's friend, Digna Reyes, and Ms. Reyes' child accompanied Plaintiff and J.G. on the bus. *Id.* at 7-8.

While en route, J.G.—an eleven year old in perfect health—stood in the back of the bus and held on to a pole as the other members of the traveling party remained seated. *Id.* at 24, 39. According to Plaintiff, at no time during the trip did anyone change seats or change where they were standing. *Id.* at 24. The operator, however, asserts that J.G. was "moving from seat to seat to standing up" and then sitting back down again. *See* Def. Mot. Summ. J., Underwood Dep., Ex. 4, ECF No. 21-5 at 20. The operator, who has a policy of not addressing children directly in order to avoid offending their parents, told a third-party to tell J.G. that the "Bus Driver said can he please sit down." *Id.* at 18, 20. The message was communicated to J.G., and J.G. finally sat down. *Id.* at 18. Sometime thereafter, J.G. stood up again and held on to the pole. *Id.* at 20.

After about fifteen minutes into the trip, J.G. was standing up and holding the pole. *Id.*; *see also* Def. Mot. Summ. J., Sanchez-Salmeron Dep., Ex. 1, ECF No. 21-2 at 25 ("[J.G.] was the only one standing in the back of the bus"); Def. Mot. Summ. J., J.G. Dep., Ex. 3, ECF No. 21-4 at 10 (admitting that he was holding on to a pole).[2] According to Plaintiff, the operator,

---

[2] Although the operator stated in her deposition that J.G. was standing up during the ride, the incident report indicates that the operator believed that J.G. was sitting. *See* Pl. Resp., Incident Report, Ex. 1, ECF No. 26 at 9. However, the incident report is not necessarily inconsistent with

who "was going quite fast," hit the brakes "real quick."  *See* Def. Mot. Summ. J., Sanchez-Salmeron Dep., Ex. 1, ECF No. 21-2 at 25.[3]

The operator testified that she hit the brakes because she was approaching a stop light. *See* Def. Mot. Summ. J., Underwood Dep., Ex. 4, ECF No. 21-5 at 21.  Plaintiff, Ms. Reyes, and J.G. all testified that they were unaware of what has happening outside of the bus immediately prior to the moment that the operator hit the brakes.  *See* Def. Mot. Summ. J., Sanchez-Salmeron Dep., Ex. 1, ECF No. 21-2 at 26-27; Def. Mot. Summ. J., Reyes Dep., Ex. 2, ECF No. 21-3 at 20; Def. Mot. Summ. J., J.G. Dep., Ex. 3, ECF No. 21-4 at 10.

As a result of the alleged sudden breaking, J.G. "lost control of his body and fell."  *See* Def. Mot. Summ. J., Sanchez-Salmeron Dep., Ex. 1, ECF No. 21-2 at 25.  J.G. landed on the floor "in the middle [of the bus] where the seats are located."  *See* Def. Mot. Summ. J., Sanchez-Salmeron Dep., Ex. 1, ECF No. 21-2 at 26.  After applying the brakes, the operator, who was looking at the red light in front of her, glanced back toward J.G. using a big rearview mirror located above the driver's seat.  *See* Def. Mot. Summ. J., Underwood Dep., Ex. 4, ECF No. 21-5 at 22.  The operator testified that she could "see everything that [was] going on in the back of the bus," including J.G.'s loss of balance.  *Id.* at 21-22.

No one else on the bus was injured.  *See* Def. Mot. Summ. J., Sanchez-Salmeron Dep., Ex. 1, ECF No. 21-2 at 27.  After J.G. fell, the operator observed that he "sprung up" and quickly went to his seat.  *See* Resp., Underwood Dep., Ex. 1 at 7.  No evidence in the record contradicts

---

the operator's deposition, given that operator stated that J.G. was alternating between standing and sitting throughout the entire bus trip.

[3] J.G. also stated that the operator hit the brakes suddenly.  See Def. Mot. Summ. J., J.G. Dep., Ex. 3, ECF No. 21-4 at 8.  Ms. Reyes described the incident somewhat differently, testifying that the "female bus driver started the bus very quickly and stopped suddenly."  See Def. Mot. Summ. J., Reyes Dep., Ex. 2, ECF No. 21-3 at 20-21.

this fact.  After the operator came to her final stop, Plaintiff approached the front of the bus and informed the operator that J.G. was experiencing pain in his left arm.  *Id.*  Thereafter, an ambulance was called, which later transported J.G. to Holy Cross Hospital.  *See* Def. Mot. Summ. J., Sanchez-Salmeron Dep., Ex. 1, ECF No. 21-2 at 34.  Subsequently, Plaintiff treated J.G. with ibuprofen and heating pads.  *Id.* at 33.

## II. Discussion

A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc*., 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting the former Fed.R.Civ.P. 56(e)).  "A mere scintilla of proof . . . will not suffice to prevent summary judgment."  *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).   "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249–50. (citations omitted).  At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion.  *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

A.  Common Carriers, like WMATA, have a heightened duty of care in negligence cases.

In Maryland, to succeed on a negligence claim, a plaintiff must prove four well-established elements: "'(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.'" *BG & E v. Lane*, 338 Md. 34, 43, 656 A.2d 307, 311 (1995) (quoting *Rosenblatt v. Exxon*, 335 Md. 58, 76, 642 A.2d 180, 188 (1994)); *see also Todd v. Mass Transit Administration*, 373 Md. 149, 155, 816 A.2d 930, 933 (2003).

Under Maryland law, a common carrier, like WMATA, owes its passengers the highest degree of care to provide safe means and methods of transportation for them.  *Todd v. Mass Transit Admin.*, 373 Md. at 156, 816 A.2d at 934.  Consistent with this standard, the common carrier owes its passengers a duty to deliver them to their destination as expeditiously as possible.  *See e.g.*, *Mass Transit Admin. v. Miller*, 271 Md. 256, 259, 315 A.2d 772, 774 (1974).  Nevertheless, a "common carrier is not an insurer of safety of its passengers." *Todd*, 373 Md. 149 at 156, 816 A.2d at 935.  Indeed, a common carrier is "'only bound to employ the utmost care and diligence which human foresight can use.'"  *See Smith v. Baltimore Transit Co.*, 211 Md. 529, 537, 128 A.2d 413, 417 (1957) (quoting *Koester Bakery Co. v. Poller*, 187 Md. 324, 330, 50 A.2d 234, 237 (1946)).

B.  The operator was not negligent in driving the bus while J.G., a child, was standing, because J.G. did not have a disability or infirmity.

Generally, the driver of a common carrier is not required to wait for a passenger to sit down before starting the vehicle.  *See Wash. Metro. Area Transit Auth. v. Djan*, 187 Md. App. 487, 492, 979 A.2d 194, 196 (2009) (collecting cases); *Carolina Coach Co. v. Bradley*, 17 Md. App. 51, 55, 299 A.2d 474, 477 (1973) (establishing the principle that "[i]n Maryland, a bus

5

driver is not required to wait until his passengers are seated before starting the bus in operation"). If, however, a passenger is laboring under some apparent infirmity or disability, the driver may be required to wait for the passenger to sit down before starting the vehicle. *See Miller v. Mass Transit Admin.*, 18 Md. App. 220, 306 A.2d 261 (1973), *cert. granted*, 269 Md. 763 (1973) *and judgment aff'd*, 271 Md. 256, 315 A.2d 772 (1974).

Applying these principles, in *Washington Metropolitan Area Transit Authority v. Djan*, 187 Md. App. at 492, 979 A.2d at 196, the Maryland Court of Special Appeals held that even though the plaintiff was holding a package and "not free to grasp a pole or a seat," the driver did not have wait for plaintiff to take a seat because the plaintiff was "neither disabled nor elderly." *Djan*, 187 Md. App. at 493, 979 A.2d at 197. In Maryland, the "'custom and practice of a party… is not helpful in a determination of what constitutes reasonable care.'" *Id.* (citing *W. Md. Ry. Co. v. Griffis*, 253 Md. 643, 653, 253 A.2d 889 (1969)). Thus, the fact that the bus driver in *Djan* "lowered the steps of the bus" and possibly viewed plaintiff as disabled was irrelevant in determining reasonable care. *Id.*

Here, regardless of whether J.G. was sitting or standing, the operator was not negligent. J.G. did not have a disability or infirmity that would have required the operator to wait before starting the bus. Thus, as in *Djan*, whether J.G. was standing is irrelevant. Likewise, the operator's directive to J.G. to sit is immaterial. The controlling issue is whether J.G. was in fact impaired in some way, not whether the operator treated J.G. as disabled or infirmed due to his age. Therefore, since J.G. was a perfectly healthy child, the operator was not negligent in driving the bus while J.G. was standing.

<u>C. Because Plaintiff's claims are based only on "adjectival descriptions of the nature of the stop" Plaintiff does not have enough evidence so sustain her negligence claim</u>

While a common carrier may be guilty of negligence for failing to use care to safeguard its passengers against injury, a common carrier is not liable for a sudden jerking or lurching which is not the result of its own negligence. *See Commissioner of Motor Vehicles v. Baltimore & Annapolis R. Co*., 257 Md. 529, 263 A.2d 592 (Md. 1970). Generally, if a passenger is injured as a result of a sudden stop that was made to avoid an unexpected obstacle, the common carrier will not be held liable when the driver operated the vehicle in a normal and safe manner. *See Wash. Metro. Area Transit Auth. v. Seymour*, 387 Md. 217, 226 874 A.2d 973, 978 (2005). A mere showing that the vehicle made an abrupt stop is insufficient to prove negligence. *See Bailey v. Wash. Metro. Area Transit Auth.*, 2011 WL 5007884, at *2 (D. Md. October 14, 2011). Rather, in order to permit an inference of negligence, a passenger must demonstrate that the incident was "so abnormal and extraordinary" through a "definite, factual incident" that arose out of the incident. *Seymour*, 387 Md. at 226, 874 A.2d at 978 (finding that the fact that the abrupt stop threw the plaintiff from her seat with enough force to break her tibia presented an initial inference of negligence).

When a plaintiff's claim is premised only on "mere adjectival descriptions of the nature of the stop," courts are reluctant to allow the claim to survive as to the common carrier defendant. *Bailey*, 2011 WL 5007884, at *3. For example, in *Commissioner of Motor Vehicles v. Baltimore & Annapolis Railroad Co*., 257 Md. 529, 263 A.2d 592 (Md. 1970), the court rejected a negligence claim and held that the plaintiff made no objective showing that a bus' sudden stop was abnormal and extraordinary. There, a bus passenger fell to the floor when the bus stopped, and a fellow passenger testified that the bus made "quick" or "dynamite" stop after the driver "slammed" or "dynamited" brakes. *Id*. at 534, 263 A.2d at 595. The court rejected the

negligence claim, reasoning that there was no evidence to show that the two other passengers fell off their seats or that any other items were thrown around the bus. *Id.*; *see also Baltimore Transit Co. v. Pue*, 243 Md. 256, 220 A.2d 551, 554 (1966) ("Recovery is denied usually in cases where the testimony has been no more than characterizations by witnesses that the motion of the vehicle was extraordinary or violent, with no fact or inference of fact to support the characterization."); *Retkowsky v. Baltimore Transit Co.*, 222 Md. 433, 160 A.2d 791 (1960) (affirming the trial court's directed verdict in favor of the defendant carrier in negligence suit despite plaintiff's testimony that the street car "started with a 'very sudden jerk'" that knocked her down into a sitting position because all the evidence amounted to nothing more than the plaintiff's adjectival descriptions of the manner in which the streetcar started).

Here Plaintiff's claims are based entirely on "adjectival descriptions of the nature of the stop." While Plaintiffs argue that the stop was sudden, this contention alone is does not support a negligence claim absent any evidence of why the bus driver stopped. The Plaintiff has offered no evidence that would counter the operator's testimony that she stopped the bus, as reasonably required in order to comply with the law, for a red light. Indeed, neither Plaintiff, J.G., nor any other member of her party saw what was happening outside of the bus at the time of the stop. Plaintiff has failed to offer any evidence to that would permit a reasonable jury to find the operator's conduct to be abnormal and extraordinary, and thus negligent. Therefore, this Court will grant Defendant WMATA's motion for summary judgment.

**III. Conclusion**

For the aforementioned reasons, Defendant's Motion for Summary Judgment shall be granted.   A separate Order follows.


Date: <u>June 28, 2012</u>                                        <u>                    /s/                    </u>
                                                                                    ROGER W. TITUS
                                                                                    UNITED STATES DISTRICT JUDGE